IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

PHILIP VAZZANA                                                    PLAINTIFF

V.                                    CASE NO.:  4:03CV289-PB

CITY OF GREENVILLE, ET AL.                             DEFENDANTS

## MEMORANDUM BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SANCTIONS

COME NOW the City of Greenville, Mississippi, Paul C. Artman, Jr., Lee Owen and Brad Jones, Defendants in the above-styled and numbered cause, and submit this, their Memorandum Brief in Support of their Motion for Sanctions pursuant to the Mississippi Litigation Accountability Act, Miss. Code Ann. §11-55-1 et seq.  For the reasons stated below, this claim was frivolous, as it was filed without substantial justification, was groundless in fact and in law, and vexatious, so that sanctions under the Litigation Accountability Act, including the assessment of attorneys' fees and expenses spent in defending this meritless case, should be imposed.

## FACTS

On June 9, 2000, pursuant to a  "Mutual Agreement" signed by Vazzana and by the City, as well as an Order of the Circuit Court of Washington County dated March 13, 2000 (the "Order") authorizing the City of Greenville  to clean up

Vazzana's property, the City entered Vazzana's vacant lot located at 312 Central Street, and performed clean-up procedures.[1]

Three years later, Plaintiff Vazzana filed this lawsuit claiming that the clean up operation violated his right to due process under the Constitution of the United States. In addition to the City of Greenville ("the City"), Plaintiff Vazzana named as defendants former Mayor Paul Artman, City Councilman Lee Owens, and City Director of Public Works Brad Jones, in their individual as well as official capacities.

The Federal Court Complaint filed on behalf of Vazzana contains multiple misrepresentations, described below. Further, at trial, Vazzana brought forward no evidence to support his allegations of deprivation of due process rights, or any evidence whatsoever giving rise to a cause of action under the United States Constitution.

On June 1, 2006, following two days of testimony, a jury returned a verdict in favor of all defendants. The Court entered judgment on the jury verdict the following day.

On June 14, 2006, Plaintiff Vazzana filed a "Motion for a Judgment as a Matter of Law and a Trial on the Issue of Damages Only or, in the Alternative a New Trial" and submitted a memorandum brief in support of his Motion. On June 15, 2006, Plaintiff Vazzana filed a "Corrected Motion for a Judgment as a

---

[1] Plaintiff Vazzana is the owner of five parcels of property, including his residence, located in downtown Greenville, Mississippi. Vazzana, a self-described "collector," filled the grounds of those properties with an accumulation of items large and small, including junked and inoperative cars. His properties have been the subject of complaints from the community since at least 1993.

Matter of Law and a Trial on the Issue of Damages Only or, in the Alternative a New Trial."

1.     Course of the Litigation Establishing the City's Right to Enter Plaintiff Vazzana's Property to Perform Clean-up Operations in June 2000

At the trial of this cause, this Court correctly held that the issues resolved by the Order would not be re-litigated, as the Order rendered those claims *res judicata*.  However, a brief description of the litigation leading up the Order is necessary for the purposes of this Motion, as the course of that litigation graphically illustrates Plaintiff Vazzana's lack of grounds for his due process claims in this lawsuit, as well as his obstinate and vexatious attempts to prevent the City from carrying out its legitimate functions, culminating in this lawsuit.[2]

On May 19, 1998, after appropriate notice and after a public hearing, the Greenville City Council, acting pursuant to Miss. Code Ann. § 21-19-11,  found Vazzana's properties to be in such a state of uncleanliness as to constitute a menace to public health and safety of the community.  One of these properties was 312 Central Street, the subject of this lawsuit.  The City passed resolutions that "the City shall have grass and weeds cut, and all trash and debris removed" from all five properties.

Plaintiff Vazzana did not appeal these City actions, and the findings and resolutions became final after ten days pursuant to applicable law.

---

[2]  As contained in the Pretrial Order entered March 30, 2006, the description of events leading to the March 2000 Order of the Circuit Court of Washington County are undisputed, having been established by the pleadings, by stipulation or by admission.

On August 4, 1998, after proper publication of notice that they would be considered on that date, bids were accepted by City Council for the clean-up of Vazzana's properties.

At this point, Plaintiff Vazzana, in an effort to block the implementation of a decision he had not appealed, appealed the City's awarding of bids to clean his property. The following record demonstrates that, in pursuing this appeal, Vazzana thoroughly litigated this matter:

- Plaintiff Vazzana's appeal was filed on August 14, 1998;

- The City filed its Motion to Dismiss the appeal on November 4, 1998;

- Circuit Judge Gray Evans dismissed Plaintiff's appeal on June 28, 1999;

- Plaintiff's counsel (not his present counsel) sent to Judge Evans, but did not file with the Circuit Clerk, a Motion to Reconsider the dismissal of the appeal;

- Judge Evans entered an order denying the Motion to Reconsider on September 23, 1999;

- Vazzana, acting *pro se*, sent to Judge Evans yet another motion to reconsider the dismissal on September 27, 1999, although the motion was not actually filed until October 20, 1999;

- At a hearing on the plaintiff's last motion, Vazzana (once again represented by counsel) was granted ten days within which to file a brief in support of his motion. After an additional ten day extension, Vazzana did file a brief; the City filed a responsive brief on February 22, 2000.

On March 13, 2000, Judge Evans entered an order affirming once again the dismissal of Plaintiff's appeal, and authorized the City "to proceed forthwith to clean the properties which are the subject of this appeal . . . of all weeds, grass, trash, and debris as illustrated by the photographs and video tape of said

properties as shown to the City Council of Greenville at its hearing of this matter . . . ,"

Plaintiff Vazzana did not appeal Judge Evans' March 13, 2000 Order that allowed the City of Greenville to proceed with the "clean up" as set forth in the Resolutions of May 19. 1998, and the City was entitled at that point, with no further proceedings, to enter Vazzana's property and effect the cleanup.

Nevertheless, on April 21, 2000, the City and Vazzana entered into a document entitled "Mutual Agreement," which addressed the implementation of the cleanup of Plaintiff's property.

The "Mutual Agreement," which provided Vazzana with yet another opportunity to perform the clean-up himself, clearly states that it was entered into "for the purpose of determining what weeds, grass, trash, and debris must be cut, cleared, or removed *in accordance with the Judgment of the Circuit Court of Washington County, Mississippi dated March 13, 2000.*" (emphasis added).

The April 21st agreement gave then-Mayor Artman total discretion to determine a list of items to be removed and, accordingly, on April 24, 2000, Vazzana signed another "Mutual Agreement" that contained Artman's list of the items that were to be removed on the each of the five parcels of property.

Under the "Mutual Agreement," Vazzana was to undertake to remove the listed items within two weeks of his receipt of the list. Under the terms of the agreement, the Mayor was authorized to approve one two-week extension of time for Vazzana to perform the work. In the event the work was not satisfactorily

completed, the City was authorized, pursuant to Judge Evans' March 13, 2000 Order referenced in the "Mutual Agreement," to enter the property and bring it into compliance with the City's ordinance.

With regard to 312 Central Street, the list contained in the "Mutual Agreement" of April 24, 2000 provided:

> "The delineating [sic] the weeds, grass, trash, and debris, which must be cut, cleaned, and/or removed. [sic] The following list must be completed:
>
> • • • •
>
> 4.    312 Central Street:
>
> >    a.    Removal of everything except cars, truck, tractor and riding lawn mower.

On or about June 6, 2000, well over a month after Vazzana received the list of work that had to be performed, he had not done so. Accordingly, at the Council's June 6th meeting, the Council, pursuant to the two "Mutual Agreements" and Judge Evans' Order, voted to finally bring this matter to a close by having the city workers clean the property if Vazzana had not completed the work. The cleanup was done over two separate days, on June 9, 2000 and June 26, 2000.

2.    <u>The Federal Court Complaint –Misstatements, Inaccuracies and Omissions</u>

On June 9, 2003, Vazzana filed suit in Federal Court, claiming that the City and the individual defendants violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution when the City

cleaned up his property in June of 2000.  <u>See</u>  Complaint,  attached to Defendants' Motion as Exhibit A.

The Complaint alleged that the individual defendants, Artman, Owen, and Jones, were liable for "their intentional acts and willful conduct."  Complaint at paragraph 9.

The Federal Court Complaint filed on behalf of Vazzana contains multiple misstatements of facts and material omissions, generally in paragraphs 10 through 22.

For example, at no point in the entire factual recital does the Federal Complaint mention the approximate one year and seven month history of litigation -- "due process," if you will -- that immediately preceded the events about which complaint is made.

Also, Vazzana brazenly asserted in the Complaint that he "was at all times in compliance with the zoning regulations of Defendant City,"  an assertion that was not only factually untrue, it totally ignored the fact that the Council had made a factual, final determination that he was <u>not</u> in compliance with city regulations.  Since the Complaint omitted this basic fact, it also omitted any reference to Vazzana's protracted, unsuccessful appeal,  which lasted from August, 1998 until March 13, 2000.

Consequently, there is no mention whatsoever of Judge Gray Evans' March 13, 2000 Order authorizing the clean up of Vazzana's property by the City.

Vazzana also claimed, in paragraph 12, that "ignoring its own ordinances, Defendant City continually harassed Plaintiff Vazzana . . . . " At trial, Vazzana failed to bring forward any proof of harassment, or any proof that the City had violated or ignored any of its ordinances in connection with this case.

In paragraph 13 of the Complaint, Vazzana flatly stated that he <u>never</u> received the list of work to be done as required in the "Mutual Agreement." In fact, Vazzana had signed the list of April 24, 2000, a copy of which was admitted at trial without objection.

In paragraph 17 of the Complaint, Vazzana falsely stated that Chancellor Ceola James issued a Temporary Restraining Order prohibiting the City from continuing its cleanup of Vazzana's property. To the contrary, although there is certainly a record of Vazzana's <u>attempt</u> to obtain a TRO, there is no record of any such order having been signed.[3]

The Complaint demanded "actual and compensatory" damages against all defendants in the amount of $5,000,000, and an award of punitive damages against the individual defendants of $1,500,000.

After the lawsuit was filed, Defendants' counsel immediately called to the attention of Vazzana's counsel the frivolous charges of the litigation. By letters dated September 7, 2003, June 17, 2004 and July 16, 2004,[4]

---

[3] At trial, Plaintiff attempted to argue that a TRO had been granted by Judge James. After Defendants quite properly objected to this, Plaintiff was ordered to obtain a copy of this alleged Temporary Restraining Order. The issue disappeared.

[4] These letters are attached to Defendants' Motion for Sanctions as Exhibits B, C and D, respectively.

3.  <u>Plaintiff Vazzana failed to bring forward any evidence at trial to substantiate his claims under 42 U.S.C. § 1983.</u>

At trial, Vazzana brought forward no evidence to substantiate his allegations of deprivation of due process rights, or any federal cause of action under 42 USC §1983.

Vazzana's only proof of damage to his property was his own testimony that city workers removed a riding lawnmower contrary to the "Mutual Agreement," and that the city workers caused damage to a tractor axle and to the trunk of a Volkswagen. Plaintiff offered no evidence that the city intentionally caused that damage by any official act, policy or custom. To the contrary, Plaintiff admitted that the alleged damage to the tractor axle and to the Volkswagen (even if those claims are believed) were unintentional.

The uncontroverted evidence at trial was that the "Mutual Agreement" was an Agreement entered into for the purpose of implementing the Circuit Court's Order of March 13, 2000, while giving Vazzana yet another opportunity to clean his property himself.

Vazzana put forward no evidence whatsoever, other than his own bald and wholly unsupported assertion, to support his allegations that the City or any of the individual defendants intentionally caused any damages or intended to deprive him of any constitutional rights. To the contrary, Vazzana testified that the City had entered into the "Mutual Agreement" in order to "help him."

**LEGAL AUTHORITY AND ANALYSIS**

Plaintiff Vazzana has engaged in an aggressive, obstinate and willful abuse of the legal system, first in an effort to prevent the City's exercise of its lawful mandate to protect its citizens, and subsequently through this lawsuit, which is nothing more than an attempt to punish the City and city officials for carrying out the legitimate Order of the Circuit Court of Washington County authorizing the City to clean up Vazzana's hazardous property sites.

Under the Mississippi Litigation Accountability Act, a party who abuses the legal system in this manner can be held liable for sanctions in the form of costs and attorneys fees and expenses incurred in defending an action brought without substantial justification. The Litigation Accountability Act provides, in pertinent part, that:

> . . . in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment. . . .

Miss. Code Ann. § 11-55-5 (1988).

For the purposes of the Litigation Accountability Act, the phrase "without substantial justification" "means that it is frivolous, groundless in fact or in law, or vexatious, as determined by the court." Miss. Code Ann. § 11-55-3 (1988).

In deciding whether a claim is "frivolous" under the Act, the Mississippi Supreme Court uses the definition provided in Rule 11 of the Mississippi Rules

of Civil Procedure.  <u>Scruggs v. Saterfiel</u> , 693 So.2d 924, 927 (Miss. 1997)(citing <u>Leaf River Forest Products, Inc. v. Deakle</u>, 661 So.2d 188, 197 (Miss.1995); <u>Smith v. Malouf</u>, 597 So.2d 1299, 1303 (Miss.1992)).    Under Rule 11, a "frivolous" claim is one that has "no hope of success."  <u>Scruggs</u>, 693 So. 2d at 927 (citing <u>Stevens v. Lake</u>,  615 So.2d 1177, 1184 (Miss.1993)).

        <u>See</u> <u>Triplett v. Brunt-Ward Chevrolet, Oldsmobile, Pontiac, Buick, Cadillac, GMC Trucks, Inc.</u>,  812 So.2d 1061, 1067-68 (Miss. Ct. App. 2001)(holding amended complaint frivolous where "it made essentially the same allegations stated in the original complaint against both defendants and the original complaint had been dismissed for failure to state a claim."); <u>Tricon Metals & Services, Inc. v. Topp</u>,  537 So.2d 1331, 1336 (Miss. 1989)(holding chancellor's imposition of Rule 11 sanctions appropriate where "[the] defendant has a complete defense, then it follows that a plaintiff has no hope of success.").  <u>See also</u> <u>Fragumar Corp., N.V. v. Dunlap</u>,  925 F.2d 836, 840 (5th Cir. 1991)(applying Texas law to find that attorney's fees warranted where the trial court found that the claim against a defendant was "so lacking in fact as to be groundless and in bad faith.")

        The Litigation Accountability Act provides a list of factors which must be considered before imposing sanctions:

11

In determining the amount of an award of costs or attorney's fees, the court shall exercise its sound discretion. When granting an award of costs and attorney's fees, the court shall specifically set forth the reasons for such award and shall consider the following factors, among others, in determining whether to assess attorney's fees and costs and the amount to be assessed:

(a)     The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;

(b)     The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;

(c)     The availability of facts to assist in determining the validity of an action, claim or defense;

(d)     Whether or not the action was prosecuted . . . , in whole or in part, in bad faith or for improper purpose;

(e)     Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict;

(f)     The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy;

(g)     The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;

(h)     The amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court;

(i)     The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action;

(j)     The extent of any effort made after the commencement of an action to reduce the number of parties in the action; and

      (k)     The period of time available to the attorney for the party asserting any defense before such defense was interposed."

Miss. Code Ann. § 11-55-7.

In <u>Wyssbrod v. Wittjen</u>, 798 So.2d 352, 361 -62 (Miss.2001), the Mississippi Supreme Court upheld sanctions imposed under the Mississippi Litigation Accountability Act. Using an abuse of discretion standard, the Court ruled that the record supported an award of sanctions where the attorney and his client had no evidence of damage or loss as a result of the conduct described in the complaint. <u>See also</u> <u>Wheeler v. Stewart</u>, 798 So.2d 386, 393 (Miss.2001) (upholding sanctions against pro se plaintiff where plaintiff knew or should have known his action against municipal judge for traffic fine was without substantial justification); (<u>Scruggs v. Saterfiel</u>, 693 So.2d 924, 927 (Miss.1997) (trial court's imposition of sanctions under Litigation Accountability Act reviewed under abuse of discretion standard).

In the case at bar, each of the factors in support of sanctions under the Litigation Accountability Act can be satisfied, and will now be separately addressed.

1.    <u>The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;</u>

Plaintiff Vazzana filed his lawsuit claim on June 9, 2003, three years after the City began its authorized cleanup on June 9, 2000 on his property at 312 Central Street.

There can have been no question at that time as to the lack of validity of any federal claim in this matter. The City Council found Vazzana's property to be in deplorable condition, and this finding was never challenged. Vazzana's appeal of the award of the bids to cover cleaning his property was not successful – the appeal was dismissed. On March 13, 2000, Judge Evans entered an order authorizing the City to effectuate the necessary cleanup – this Order was never appealed. After Judge Evans' Order was entered, the City gratuitously agreed to give Vazzana additional time to do what he should have done over two years before – he didn't do it. Finally, in June, 2000, the City moved to remedy the situation. This action was entirely proper under both Judge Evans' Order and the gratuitous "Mutual Agreements."

Clearly, prior to June 9, 2000, the City's right to enter and clean Plaintiff Vazzana's property had been exhaustively litigated, and had been unequivocally decided in favor of the City.

In light of the foregoing, Vazzana's claims of a lack of due process were groundless in fact and in law.

2. <u>Plaintiff Vazzana made no "effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid";</u>

3. <u>The availability of facts to assist in determining the validity of an action, claim or defense;</u>

As described above, all facts necessary to determine that he had no valid federal claims were available to Plaintiff Vazzana as of June 26, 2000, at the

very latest. Nonetheless, he filed his Complaint on June 9, 2003. Further, even after Defense counsel wrote the June 17, 2004 letter to Plaintiff's counsel specifically pointing out the basis for Defendants' Litigation Act claim, (Exhibit C to Defendants' Motion), not a single claim was withdrawn.

4.  <u>Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose;</u>

The course of this litigation compels the conclusion that Plaintiff Vazzana has engaged in protracted litigation solely in order to prevent the City from exercising its lawful purposes. This practice continues to this date.

On June 14, 2006, Plaintiff Vazzana filed a "Motion for a Judgment as a Matter of Law and a Trial on the Issue of Damages Only or, in the Alternative a New Trial" and submitted a memorandum brief in support of his Motion. On June 15, 2006, Plaintiff Vazzana filed a "Corrected Motion for a Judgment as a Matter of Law and a Trial on the Issue of Damages Only or, in the Alternative a New Trial." As will be more fully addressed in Defendants' Response to the Plaintiff's post-trial motions, these Motions are entirely without support in the undisputed facts as presented and established at trial and are unsupported by applicable law.

These meritless (and, it must be said, often incomprehensible) post-trial motions can be viewed only as further evidence of Plaintiff Vazzana's intransigent refusal to accept the City's authority under Mississippi law, and his vexatious

attempts to use the legal system to punish the City and the individual defendants for the lawful exercise of that authority.

Defendants respectfully submit that under the Litigation Accountability Act this abuse of the legal system, can and must be subject to the imposition of sanctions.

5. <u>Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict;</u>

Mr. Vazzana brought this action under 42 U.S.C. §1983, alleging that the City violated his due process rights under the United States Constitution. However, at trial, Mr. Vazzana brought forward absolutely no basis in fact or in law for his federal claims. In fact, Defendants' counsel recalls no real issues of fact that were actually litigated concerning the question of Defendants' liability to Plaintiff.

The only proof put forward by Vazzana of any damages, even if believed, does not as a matter of law rise to the level necessary to state a federal cause of action.

The uncontroverted evidence at trial was that the "Mutual Agreement" was an Agreement entered into for the purpose of implementing the Circuit Court's Order of March 13, 2000, while giving Vazzana yet another opportunity to clean his property himself.

Vazzana put forward no evidence whatsoever, other than his own bald assertion, to support his allegations that the City or any of the individual

defendants intentionally caused any damages or intended to deprive him of any constitutional rights.  To the contrary, Vazzana testified that the City had entered into the "Mutual Agreements" to "help him out."

Moreover, Vazzana's only proof of damage to his property was his own testimony that city workers removed a riding lawnmower contrary to the "Mutual Agreement,"  and that the city workers caused damage to a tractor axle and to the trunk of a Volkswagen.   Plaintiff offered no evidence that the city intentionally caused that damage by any official act, policy or custom.  Moreover, plaintiff testified that the damage to the tractor axle and to the Volkswagen (even if those claims are believed) were unintentional.

6.   <u>The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy;</u>

On June 1, 2006, a Federal Jury found the defendants not guilty of the charges asserted against them.   In fact, in the entire eight-year history of this litigation, Vazzana has never prevailed on any legal filing resisting the City's right to insist that his property be in a condition consistent with the public health and safety.

7.   <u>The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;</u>

The law of 42 U.S.C. 1983 and that of due process under the United States Constitution is well settled.  Plaintiff Vazzana did not assert any new theory of law in any action that he filed, including this one.

8.      The amount or conditions of any offer of judgment or settlement in relation
        to the amount or conditions of the ultimate relief granted by the court;

In light of the jury's verdict, this consideration is not applicable.

9.      The extent to which a reasonable effort was made to determine prior to the
        time of filing of an action or claim that all parties sued or joined were
        proper parties owing a legally defined duty to any party or parties asserting
        the claim or action;

While it is true that, in a general sense, the City and its public officials owe

various duties to all citizens, it is equally true that, under the undisputed facts

of this case as presented at trial, no defendant could possibly have breached

any such duty to Plaintiff.  The undisputed proof with regard to each Defendant

was as follows:

        a)      The City of Greenville:[5]

                -       Properly found Vazzana's property to be in such a state of
                        uncleanliness as to constitute a menace to public health and
                        safety of the community.

                -       Properly accepted a bid to clean Vazzana's property when he
                        failed to do so

                -       Upon prevailing on Vazzana's appeal of this decision,
                        gratuitously gave him a further opportunity to clean his
                        property himself; and

                -       Granted Vazzana additional time when he failed to meet even
                        this extended deadline.

---

[5] At trial, Vazzana continually attempted to deflect attention from the protracted proceedings that preceded the City's ultimate entry and cleanup of his property.  However, the fact remains that he received "due process" from the beginning of the dispute – May 19, 1998.

Short of holding an <u>ad hoc</u> evidentiary hearing during the cleanup concerning each separate item as it was being removed – something that it clearly was <u>not</u> required to do – it is difficult to envision how much additional "due process" the City could have provided.

b)   <u>Paul Artman</u>:

There was simply no evidence produced at trial (or, for that matter, at any other time) that Mr. Artman did anything that would have been remotely actionable. He negotiated the "Mutual Agreement" with Vazzana and, pursuant to its terms, he designated what would be removed. He gave Vazzana even more time to perform the cleanup than the Agreement allowed. Finally, as was his absolute (and unquestioned) right under the Agreement, and pursuant to a valid Council order, he ordered the cleanup. Plaintiff offered no proof to even suggest that <u>any</u> of his actions were improper.

c.   <u>Lee Owen</u>:

Councilman Owen's presence in the lawsuit may be the most inexplicable. The only action of his that was even mentioned at trial was his vote to uphold the Mutual Agreement, and Plaintiff never really took issue with the propriety of this vote. As the Agreement gave Mayor Artman the sole discretion to determine compliance with the Agreement, even this vote had no ultimate effect upon Plaintiff.

d.   <u>Brad Jones</u>:

Mr. Jones, the City's Director of Public Works, was the individual "on the scene" at the cleanup. It was undisputed that he had no "policy making" authority, and that he was simply trying (under difficult circumstances) to carry out the provisions of the Mutual Agreement. There was no evidence produced that Mr. Jones acted improperly, not to mention intentionally or maliciously.

In sum, with regard to this issue, it is readily apparent that no meaningful attempt was made to ascertain the validity of Plaintiff's claims.

10.  <u>The extent of any effort made after the commencement of an action to reduce the number of parties in the action; and</u>

Although Defendants' counsel repeatedly demanded – up to and including the time of trial – that the individual Defendants be dismissed from the action, Plaintiff obstinately refused to do so. Defendants submit that this conduct is precisely the type for which the Litigation Accountability Act was enacted. There was no effort by Plaintiff Vazzana to reduce the number of parties in this action.

11.  <u>The period of time available to the attorney for the party asserting any defense before such defense was interposed."</u>

This consideration is not applicable to this inquiry.

## CONCLUSION

In light of the foregoing, Defendants respectfully submit that Vazzana is subject to sanctions under the Mississippi Litigation Accountability Act, and respectfully request that the Court impose the costs of this action on Plaintiff Vazzana as well as reasonable attorneys fees and expenses in an amount to be determined by the Court.

Respectfully submitted, this, the 16th day of June, 2006.

CITY OF GREENVILLE, MISSISSIPPI, ET AL
Defendants


/s/Andrew N. Alexander III
ANDREW N. ALEXANDER III
MSB#1310

OF COUNSEL:

LAKE TINDALL LLP
Post Office Box 918
Greenville, MS 38702-0918
Telephone:  662/ 378-2121
Facsimile:   662/378-2183

## CERTIFICATE OF SERVICE

I, Andrew N. Alexander, III, do hereby certify that I have this day mailed, postage prepaid, a true and correct copy of the above and foregoing document to:

> John M. Mooney, Jr., Esq.
> Law Offices of John M. Mooney, Jr.
> P. O. Box 16687
> Jackson, MS 39236-6687

This, the 16th day of June, 2006.

/s/Andrew N. Alexander III
ANDREW N. ALEXANDER, III
