# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**PHILIP VAZZANA**                                                                                    **PLAINTIFF**

**VERSUS**                                                         **CIVIL ACTION NO. 4:03CV289-P-D**

**CITY OF GREENVILLE, et al**                                                              **DEFENDANTS**

## MEMORANDUM OPINION

This cause is before the Court on the defendants' Motion for Sanctions [62-1]. The Court, having reviewed the motion, the response, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff Philip Vazzana filed the instant action on June 9, 2003; his complaint alleged a right of recovery under 42 U.S.C. § 1983 for violations of his constitutional rights under the First, Fourth and Fourteenth Amendments against the City of Greenville and various municipal employees in their individual and official capacities.[1] Vazzana complained of the actions of the City and its employees relating to a protracted dispute over the condition of various parcels of property which culminated in a cleanup of Vazzana's property located at 312 Central Street, conducted by and at the expense of the City on June 9, 2000 and June 26, 2000.

---

[1] Vazzana named Paul C. Artman, Jr., Brad Jones, Bill Burnley, Charles Moore and Lee Owen as individual defendants. Plaintiff never served Charles Moore, nor did he amend his complaint to sue Bill Burnley's estate.

A.       History of Dispute

A brief chronology of events leading up to the June 2000 cleanup effort is necessary to lay an adequate foundation for analysis of the present motion. On May 19, 1998, after proper notice and a public hearing on the matter, the Greenville City Council declared several parcels of Vazzana's property, including that located at 312 Central Street, to be in such a state of uncleanliness as to constitute a menace to public health and safety pursuant to the provisions of Mississippi Code Annotated § 21-19-11. The City Council passed resolutions to "have grass and weeds cut, and all trash and debris removed" from each of the properties in question. Vazzana failed to appeal the City's actions in a timely manner and the Council's findings and resolutions became final after ten days in accordance with applicable law.

On August 4, 1998, following published notice thereof, the City Council accepted bids for the cleanup of Vazzana's properties. Vazzana responded on August 14, 1998 by filing an appeal of the bid awards. The City moved to dismiss the appeal on November 4, 1998; Circuit Judge Gray Evans granted the motion on June 28, 1999. Vazzana's attorney submitted a motion to reconsider which was subsequently denied on September 23, 1999. Thereafter, Vazzana, acting pro se, filed a second motion to reconsider; following a hearing on the motion, on March 13, 2000, Judge Evans entered an order affirming the dismissal of Vazzana's appeal and permitting the City "to proceed forthwith to clean the properties which are the subject of this appeal . . . of all weeds, grass, trash, and debris as illustrated by the photographs and video tape of said properties as shown to the City Council of Greenville at its hearing of this matter . . . ." Vazzana did not seek an appeal of the March 13, 2000 Order.

Notwithstanding the March 13, 2000 Order, the City did not move forward with the planned cleanup of Vazzana's properties. Instead, on April 21, 2000, the City entered into a "Mutual Agreement" with Vazzana which afforded him a final opportunity to assume responsibility for the cleanup himself. The stated purpose of the "Mutual Agreement" was to determine "what weeds, grass, trash, and debris must be cut, cleared, or removed <u>in accordance with the Judgment of the Circuit Court of Washington County, Mississippi dated March 13, 2000</u>." The agreement vested former Mayor Artman with absolute discretion to determine what items were to be removed. Thereafter, on April 24, 2000, Vazzana executed a supplement to the agreement which described the items to be removed from each of Vazzana's properties. The entry pertaining to 312 Central Street required the removal of "everything except cars, truck, tractor and riding lawn mower."

The agreement obligated Vazzana to perform the required cleanup within two weeks of receiving the list; it also granted the mayor discretion to approve a single two-week extension to complete the necessary work. In the event of Vazzana's failure to perform the work in a satisfactory manner, the agreement authorized the City to effect the necessary cleanup in accordance with Judge Evans' March 13, 2000 Order.

The City Council convened again on June 6, 2000; Vazzana appeared at the meeting and conceded his failure to comply with the terms of the Mutual Agreement.[2] The Council voted to bring the matter to a close by having city workers clean the property. Following an inspection on June 8, 2000, the City undertook an extensive cleanup of Vazzana's 312 Central Street property on June 9, 2000 and June 26, 2000.

---

[2] The City Council found Vazzana's cleanup effort satisfactory with regard to four of his properties; Vazzana requested an extension of time to complete the necessary work on the final parcel. The City Council denied his request.

B.     Current Litigation

Vazzana filed the present lawsuit one day prior to the expiration of the limitations period. The City filed an answer on September 8, 2003 denying all liability and pleading a claim under the Mississippi Litigation Accountability Act. By way of letter on or about the same date, defense counsel, Andy Alexander, apprised Vazzana's attorney of the lack of factual basis to support Vazzana's claims and asked that he consider dismissing the litigation. No response was forthcoming.

The Magistrate held a telephonic case management conference on February 19, 2004 and entered a scheduling order on February 20, 2004. The parties did little to nothing concerning the case until mid-June 2004. At that time, defense counsel wrote John M. Mooney, Jr., Vazzana's attorney, another letter detailing the factual history of Vazzana's dispute with the City and pointing out numerous fallacies and misrepresentations in the complaint.[3] The letter noted the impending

---

[3] An excerpt from the June 17, 2004 letter aptly points to numerous inaccuracies in Vazzana's complaint:

> Many of the inaccuracies in the Complaint fall under the category of "sins of omission," while others are flatly, and demonstrably, untrue. While the following examples are not all-inclusive, they should serve as sufficient examples to illustrate this. For example, at no point in the entire factual recital does the Complaint mention the approximate one year and seven month history of litigation that immediately preceded the events about which complaint is made. Vazzana states uncategorically that he "was at all times in compliance with the zoning regulations of Defendant City." This is not only factually untrue, it totally ignores the fact that the Council had made a factual determination that he was not in compliance, and that factual determination was not appealed. It is both a fact and the law of the case. Since the Complaint omits this basic fact, it must also omit any reference to the appellate process, which lasted from August, 1998 until March 13, 2000, ending with Vazzana's appeal being dismissed.
>
> Vazzana continues, claiming in paragraph 12 that "ignoring its own ordinances, Defendant City continually harassed Plaintiff Vazzana and, in April,

discovery deadline and implored plaintiff's counsel to discuss the matter candidly with Vazzana and again that the lawsuit be dismissed.

Defense counsel's June 17, 2004 correspondence did not produce the desired result. On July 16, 2004, Alexander wrote Mooney another letter informing plaintiff's counsel of his decision to move forward with written discovery. The letter again emphasized the frivolous nature of the lawsuit and the defendants' intention to seek sanctions against Vazzana absent his immediate dismissal of the action. Vazzana refused.

The litigation moved forward; the deadline for dispositive motions elapsed. Defendants filed no motions seeking dismissal pursuant to either Rule 12 or Rule 56 of the Federal Rules of Civil Procedure. The parties attended a pretrial conference before the Magistrate on February 27, 2006 and submitted a joint pretrial order on March 7, 2006. The case proceeded to trial by jury on May

---

>  2000, . . . Vazzana and Defendant Artman . . . entered into a Mutual Agreement . . . ." I have no idea what the remark about the City ignoring its ordinances means, but I assume that the "harassment" that Vazzana makes reference to is his repeated attempts to appeal the Council's August, 1989 Order. Vazzana's obstinance in continuing to appeal a perfectly valid Order would hardly qualify as harassment of him by the City.
>
>  In paragraph 13 of the Complaint, Vazzana flatly states that he never received the list of work to be done as required in the "Mutual Agreement." I have already provided you with a copy of the list, signed by Vazzana, so you now know that this is simply a lie.
>
>  In paragraph 17 of the Complaint, Vazzana falsely states that Chancellor Ceola James issued a Temporary Restraining Order prohibiting the City from continuing its cleanup of Vazzana's property. I have personally reviewed the Chancery Court records. Although there is certainly a record of Vazzana's attempt to obtain a TRO, there is no record of any such order having been signed.

Exhibit C to defendants' Motion for Sanctions at pp. 3-4.

30, 2006-June 1, 2006.[4] The jury returned a verdict for the defendants and judgment was entered in accordance therewith.

Subsequent to the entry of judgment in their favor, defendants filed their Motion for Sanctions; they seek to recoup $41,131.34, the entire amount expended by them for attorney's fees and expenses throughout the course of this litigation. Plaintiff responded in opposition to the motion. The matter has been fully briefed and is ripe for decision.

LEGAL ANALYSIS

A.    Applicable Law

Defendants seek sanctions under the Mississippi Litigation Accountability Act. Said statute provides in pertinent part:

> . . . <u>in any civil action</u> commenced or appealed in any court of record in this state, <u>the court shall award</u>, as part of its judgment and in addition to any other costs otherwise assessed, <u>reasonable attorney's fees and costs against any party or attorney if the court</u>, upon the motion of any party or on its own motion, <u>finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification</u>, or that the action, or any claim or defense asserted was interposed for delay or harassment . . . .

Miss. Code Ann. § 11-55-5 (1988) (emphasis added). For purposes of the Act, the term "without

---

[4] Defendants moved for judgment under F.R.C.P. 50(a) at the conclusion of the plaintiff's case and at the conclusion of trial. Despite the paucity of proof in support of plaintiff's claims, this Court exercised its discretion in favor of submitting the case to the jury for three reasons. In the first instance, the Court was disinclined to grant a directed verdict based on defendants' failure to seek dismissal by way of dispositive motion, an action which would have obviated the need for trial and conserved the Court's time and resources. As a second matter, the Court felt that granting defendants' motion for judgment as a matter of law would be a disservice to the members of the jury who devoted their time and attention to the attorneys and the witnesses over the course of the three day trial. Finally, the Court was both confident of the jury's ability to render a fair verdict and mindful of its authority to revisit the issue under F.R.C.P. 50(b) in the event the jury reached a verdict in conflict with the overwhelming weight of the evidence. As indicated above, the Court's faith in the jury was vindicated by the ultimate verdict.

substantial justification" "means that it is frivolous, groundless in fact or in law, or vexatious, as determined by the court." Miss. Code Ann. § 11-55-3 (1988). A claim is frivolous under the Act if it has no hope of success. Scruggs v. Saterfiel, 693 So.2d 924, 927 (Miss. 1997). A claim is properly found to have been asserted for delay or harassment where a "complaint was part of a harassing tactic aimed at exacting revenge" on defendants whom the plaintiff believed had "cheated him in some way." Weisman v. Alleco, Inc. 925 F.2d 77, 80 (4th Cir. 1991).

Title 11, chapter 55, section 7, Mississippi Code Annotated, directs courts to consider the following eleven factors in determining whether to assess attorney's fees and costs and the amount to be assessed:

> (a) The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;
>
> (b) The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;
>
> (c) The availability of facts to assist in determining the validity of an action, claim or defense;
>
> (d) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose;
>
> (e) Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict;
>
> (f) The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy;
>
> (g) The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;
>
> (h) The amount or conditions of any offer of judgment or settlement in

relation to the amount or conditions of the ultimate relief granted by the court;

       (i) The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action;

       (j) The extent of any effort made after the commencement of an action to reduce the number of parties in the action; and

       (k) The period of time available to the attorney for the party asserting any defense before such defense was interposed.

Miss. Code Ann. § 11-55-7 (1988).[5]

    B.    Propriety of Sanctions

Some cases should be won; some cases should be lost and some cases should never have been filed. This case falls into the latter category. Application of the factors set forth in § 11-55-7 clearly supports an award of sanctions in this matter.

The record is clear that plaintiff waited until the statute of limitations was about to expire before filing his claim. Vazzana at all times had access to information demonstrating the lack of

---

[5] As a further matter, the Fifth Circuit has endorsed the lodestar system for awards of attorney's fees. Under that approach, the Court is to arrive at a "lodestar" figure by multiplying the reasonable number of hours expended by the prevailing hourly rate in the community for similar work. Nisby v. Commissioners Court of Jefferson County, 798 F.2d 134, 136-137 (5th Cir. 1986). The Court must then consider the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), overruled on other grounds; Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L.Ed. 67 (1989), to determine whether the lodestar figure should be adjusted to reflect any factors not otherwise subsumed in the lodestar calculation. Nisby, 798 F.2d 136-137. Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. Johnson, 488 F.2d at 717-719.

factual foundation for his § 1983 claim against the City and the individual defendants. In point of fact, the City's right to enter and clean plaintiff's property had already been adjudicated in favor of the City prior to the June 2000 cleanup effort. The testimony elicited from the witnesses over the course of the trial unearthed no evidence that the City or its employees intentionally overreached their authority in performing the necessary work.[6] Instead, the evidence was overwhelmingly to the contrary, a reality borne out by the jury's verdict in the case. Factors one, three, five and six, therefore, weigh in favor of an award of sanctions against the plaintiff.

An examination of factors two, four, nine and ten likewise supports the imposition of sanctions. Nothing before the Court suggests Vazzana made any effort to determine prior to the time of filing his complaint all parties sued or joined breached a legally defined duty to him. This is especially true with regard to plaintiff's joinder of individual defendants Artman, Owen and Jones.[7] It is also indisputable that Vazzana made no attempt to dismiss any of the claims asserted in his complaint or to reduce the number of parties in the action. His failure to do so, despite numerous requests by the defendants to that effect, is indicative of purposeful harassment. Vazzana's obstinate

---

[6] At most, the evidence of damage to plaintiff's "collectible" items can be categorized as the result of negligent acts on the part of the cleanup crew, an insufficient basis for asserting a claim of constitutional magnitude.

[7] Artman's actions were limited to the negotiation and enforcement of the "Mutual Agreement." He was guilty of nothing except according Vazzana more time to perform the cleanup than provided in the agreement. Owen's only arguable connection to the events of June 2000 were his position on the City Council and his vote to uphold the Mutual Agreement. Jones, Greenville's Director of Public Works, merely implemented the Mayor's cleanup order. He exercised no policy making authority and plaintiff introduced no proof that Jones willfully violated Vazzana's rights. Perhaps more important, nothing in the record supports plaintiff's allegation that "the individual Defendants named herein were acting outside the purpose and score of their agency and as a result are liable individually . . . ." Exhibit A to defendants' Motion for Sanctions at p. 3.

failure to recognize the invalidity of his claims against the defendants is nowhere more evident than his assertion that he "wanted his day in Court" over the events of June 2000. Plaintiff's Response to Defendants' Motion for Sanctions at p. 4. The record as a whole supports this Court's conclusion that Vazzana's claims lacked substantial justification and were instead interposed to harass the City and its officials.[8] Accordingly, the defendants' motion for sanctions is well-taken and should be granted.

    C.    Amount of Sanctions Award

Defense counsel submitted an affidavit regarding the attorneys fees and costs incurred throughout the course of the litigation. In addition, defense counsel supplied the Court with itemized statements detailing the time records for the attorneys and legal support staff involved in the defense of this action for purposes of <u>in camera</u> review. In all, defendants' legal fees and costs totaled $41,131.34. Of that sum, $690.84 represents various expenses charged to defendants throughout the course of the litigation; the remaining $40,440.50 is the amount expended by the City in legal fees from the inception of the case to the present.[9]

As indicated in subsection B. <u>supra</u>, an award of sanctions is appropriate in this matter. But for the defendants' failure to file any motion for dismissal based on qualified immunity, motion to dismiss pursuant to Rule 12 or a Rule 56 motion for summary judgment, the Court would be strongly inclined to award defendants the full amount of attorneys fees incurred in this litigation. However,

---

[8] Factor seven is of neutral effect with regard to the sanctions issue. Vazzana asserted no new theory of law in the action inasmuch as the law governing § 1983 and due process is well-settled. Factors eight and eleven do not apply in the instant case.

[9] All in all, defense counsel and his support staff expended 270.45 hours of time at rates between $40 (paralegal rate) to $165 (lead counsel) per hour. The Court further finds that the hourly rates charged are comparable with the prevailing rates in the community.

upon inquiry, defense counsel as much as admitted that he chose not to seek relief under any of the summary methods identified above because he was convinced Vazzana would continue to press his claim until a jury returned a verdict against him. This Court cannot in good conscience condone defendants' failure to avail themselves of the procedural tools available for the expeditious disposal of cases–intended in large part to avoid unnecessary expense and delay–in favor of the expectation of teaching the plaintiff a lesson. With that in mind, the Court will reduce the fee award to a sum reasonably incurred in preparing and prosecuting a motion for summary judgment. The Court will permit defendants to recover the full measure of attorneys fees incurred from the inception of the case through January 2006 ($7,234.25).[10]

However, the entries for February 1, 2006 forward reflect time and effort expended in various degrees toward trial preparation, trial and the preparation of post-trial motions totaling $33,206.25.[11] A fair approximation of the time defense counsel would have devoted to the preparation and filing of a motion for summary judgment and related filings is no more than half that actually expended on trial preparation and related matters. Accordingly, the Court will reduce the fee award for February 2006 through August 2006 by fifty percent to account for the additional unnecessary

---

[10] Lead counsel expended 43.85 hours of effort on this matter at a rate of $165 per hour over the period of time in question, a reasonable number of hours for the services performed. . The Court has considered the twelve factors set forth in Johnson, but finds that no adjustment of fees is warranted for this period of the litigation.

[11] This sum represents time and effort expended by lead counsel, associate counsel and a paralegal as follows:

| | |
|---|---|
| Andy Alexander: | 142.45 hours at a rate of $165 per hour |
| Susan O'Neal: | 65.40 hours at a rate of $130 per hour |
| April Robertson | 18.75 hours at rates of $40 - $65 per hour |

expense occasioned by the defendants' failure to seek summary dismissal under the applicable rules of civil procedure ($16,603.13).  The total fee award in this case is, therefore, $23,837.38.  Any award of costs will be limited to those submitted in a properly filed bill of costs and allowed by the Clerk of Court.

## CONCLUSION

Based on the foregoing facts and law, the Court finds that the defendants' Motion for Sanctions is well-taken and should be granted.  An amended judgment will issue accordingly.

This, the 8th day of February, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE